

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable T. M. Trimble, First Assistant
State Superintendent of Public Instruction
Austin 11, Texas

Dear Sir:

Opinion No. 0-6675

Re: Mineral leasing of certain
school land in Rusk County,
Texas

Your request for opinion has been received and carefully considered by this Department. We quote from your request as follows:

"Attached is a letter from Baker, Botts, Andrews & Wharton of Houston, Texas, containing three questions which we would like to submit to you for your consideration and opinion. * * *"

We quote from the above-referred-to letter as follows:

"Please refer to our letter of May 30, 1945, and your reply of June 6, 1945, relating to the leasing for mineral development of certain school land in Rusk County, Texas. On August 16, 1924, Frank Lewis, et al., conveyed the land in question to the County Board of School Trustees as shown by the abstracted copy of the deed attached.) The Board of Trustees of New Prospect Common School District No. 40 is now exercising jurisdiction over it. The above mentioned deed is the only one of record affecting this land.

"By statute (Article 2676, Revised Statutes) management and control of public free schools and high schools in each county are vested in the county school trustees, who are authorized to subdivide the county into school districts (Art. 2681). By Article 2749 trustees of common school districts have management and control of public schools and public school grounds; and the grounds purchased for such a district shall be under the control of the district trustees. (Art. 2754). All conveyances for the benefit of the public schools shall vest the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

property in the county school trustees (Art. 2756).
Trustees of any common school district on the order of
the county trustees may sell any property belonging to
the school district (Art. 2753). County School Trustees
constitute a body corporate (Art. 2683), as do the common
school district trustees (Art. 2748). Article 5400a au-
thorizes political subdivisions, which are bodies cor-
porate, to lease land for mineral development; and the
article sets out the procedure for leasing.

⟶ "Article 2676 in vesting control of school lands in
the county board appears to conflict with Articles 2749
and 2754, which vest control in the board of trustees
of common school district. In view of the uncertainty
resulting from such apparent conflicts, we should ap-
preciate your submitting the following questions to the
Attorney General.

"1.   Under the above state of facts in what
      body is the title to the land in question?

"2.   From what body should a mineral lease be
      taken?

"3.   If it is determined that the Trustees of
      the Common School District are the proper
      parties to execute the lease, should the
      procedure set out in Article 2753 relat-
      ing to sales be followed? If so, how
      should such article be integrated with
      Article 5400A?"

The general management and control of the public free
schools and high schools in each county of this State, unless other-
wise provided by law, are vested in the county school trustees.
Article 2676, Vernon's Annotated Texas Civil Statutes.

Article 2681, Vernon's Annotated Texas Civil Statutes,
provides, in part, as follows:

"The county school trustees are authorized to ex-
ercise the authority heretofore vested in the commissioners'
court with respect to subdividing the county into school
districts, and making changes in school district lines.
. . ."

Article 2683, Vernon's Annotated Texas Civil Statutes,
reads as follows:

"The county school trustees of each county shall constitute a body corporate, by the name of the county school trustees of _____ County, State of Texas, and in that name may acquire and hold real and personal property, sue and be sued, and may receive bequests and donations or other moneys or funds coming legally into their hands, and may perform other acts for the promotion of education in the county.  The title to any school property belonging to the county, the title of which has heretofore been vested in the county judge and his successors in office, or any school property that may be acquired, shall vest in the county school trustees and their successors in office for public free school purposes."

Article 2748, Vernon's Annotated Texas Civil Statutes (applicable to common school districts) reads, in part, as follows:

"Said trustees shall be a body politic and corporate in law, and shall be known by and under the title and name of district trustees of district number ......., and county of ......, State of Texas; and as such may contract and be contracted with, sue and be sued, plead or be impleaded, in any court of this State of proper jurisdiction, and may receive any gift, grant, donation or devise made for the use of the public schools of the district.  . . ."

Article 2749, Vernon's Annotated Texas Civil Statutes (applicable to common school districts) reads, in part, as follows:

"Said trustees shall have the management and control of the public schools and public school grounds; and they shall determine how many schools shall be maintained in their school district, and at what points they shall be located;  . . ."

Article 2753, Vernon's Annotated Texas Civil Statutes (applicable to common school districts--see R. B. Spencer & Co. v. Brown, 198 S. W. 1179) reads as follows:

"The trustees of any school district, upon the order of the county trustees prescribing the terms thereof, when deemed advisable, may make sale of any property belonging to said school district, and apply the proceeds to the purchase of necessary grounds, or to the building or repairing of schoolhouses, or place the proceeds to the credit of the available school fund of the district.  Id."

Article 2754, Vernon's Annotated Texas Civil Statutes, reads as follows:

"All school houses erected, grounds purchased or leased for a school district, and all other property belonging thereto, shall be under the control of the district trustees of such district. Acts 1905, p. 263."

Article 2756, Vernon's Annotated Texas Civil Statutes, reads as follows:

"All conveyances, devises, and bequests of property for the benefit of the public schools made by any one for any county, city or town, or district, shall, when not otherwise directed by the grantor or devisor, vest said property in the county school trustees, or the board of school trustees of the city or town, or the trustees of the school district, or their successors in office, as the trustees for those to be benefited thereby, and the same, when not otherwise directed shall be administered by said officers under such rules as the State Superintendent may establish. Id."

In 1919, this Department in opinion No. 1986, written by Honorable John W. Maxwell, Assistant Attorney General, addressed to the Speaker and Members of the House of Representatives of Texas, recorded on pages 512, 513, 514 and 515, Report of the Attorney General of Texas for 1918-1920, among other things construed Article 2846 of the Revised Civil Statutes of 1911. (Article 2846, Rev. Civ. St. of 1911 and the present Article 2753, V. A. C. S., are identical with the exception that said Article 2846 of 1911 authorized the sale of school property upon the order of the Commissioners' Court while Article 2753, V. A. C. S. authorizes sales of school property upon order of the county trustees.) This opinion held that the district trustees were authorized to execute an oil and gas lease on school land subject to the approval of the Commissioners' Court or county school trustees, dependent on which body was the proper authority to approve same. The opinion pointed out at that time there was doubt as to which body should approve the sale or lease and recommended that the Legislature clear up the question by the enactment of appropriate legislation. The Legislature has since enacted Article 2753, V. A. C. S., quoted hereinabove in this opinion. We enclose herewith a copy of opinion No. 1986 for your information.

Since the rendition of opinion No. 1986, and since the enactment of Article 2753, V. A. C. S., the 45th Legislature of Texas

on May 5, 1937, enacted House Bill 861, (now codified as Article 5400a, Vernon's Annotated Texas Civil Statutes) which House Bill is a comprehensive act providing a definite and certain method of procedure of making oil and gas leases by political subdivisions of Texas.  Said House Bill 861 reads as follows:

        —  "AUTHORIZING POLITICAL SUBDIVISIONS TO LEASE LANDS
            FOR MINERAL DEVELOPMENT.

            "H. B. No. 861_7     Chapter 279.

            "An Act authorizing political subdivisions of the
                State of Texas to lease lands owned by such
                subdivisions for mineral development purposes
                and prescribing the method and manner of mak-
                ing such leases, and declaring an emergency.

            "Be it enacted by the Legislature of the State of
            Texas:

        "Section 1.  Political subdivisions which are bodies corporate with recognized and defined areas, are hereby authorized to lease for mineral development purposes any and all lands which may be owned by any such political subdivision.

        ✕ "Sec. 2.  The right to lease such lands shall be exercised by the governing board, the commission or commissioners of such political subdivision which are by law constituted with the management, control, and supervision of such subdivision, and when in the discretion of such governing body they shall determine that it is advisable to make a lease of any such lands belonging to such district or subdivision, such governing body shall give notice of its intention to lease such lands, describing same, by publication of such notice in some newspaper published in the county, having a general circulation therein, once a week for a period of three (3) consecutive weeks, designating the time and place after such publication where such governing body will receive and consider bids for such mineral leases as such governing body may determine to make. On the date specified in said notice, such governing board or body shall receive and consider any and all bids submitted for the leasing of said lands or any portions thereof which are advertised for leasing, and in the discretion of such governing body shall award

→the lease to the highest and best bidder submitting a bid therefor, provided that if in the judgment of such governing body the bids submitted do not represent the fair value of such leases, such governing body in their discretion may reject same and again give notice and call for additional bids, but no leases shall in any event be made except upon public hearing and consideration of said bids and after the notice as herein provided.

"Sec. 2a.  Provided that all such leases may be granted by public auction and that no leases shall be executed in any case except and unless the lessor —shall retain at least one-eighth royalty, provided further that in no case shall the primary term of said lease be for more than a period of ten (10) years from the date of execution and approval thereof.

"Sec. 3.  The fact that political subdivisions of the State have lands owned, held, and used for public purposes but which purposes will not be hindered or interfered with by the development of said lands for mineral purposes, and that some of said lands have possibilities of minerals therein and that development of said lands for mineral purposes is necessary in order to conserve said mineral estate and prevent the loss thereof, create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended and said Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted.

"/NOTE.--H. B. No. 861 passed the House, March 30, 1937, by a vote of 113 yeas, 0 nays; passed the Senate, with amendments, April 29, 1937, by a vote of 22 yeas, 6 nays; House concurred in Senate amendments, April 30, 1937, by a vote of 132 yeas, 0 nays./

"Approved May 5, 1937.
"Effective May 5, 1937."

It is a well-settled principle of law that where the Legislature prescribes a definite, certain method of procedure for a —political subdivision to follow, other methods, by implication of law, are excluded.  See the following authorities:

Foster v. City of Waco, 255 S. W. 1104
Citizens Bank v. City of Terrell, 14 S. W. 1003
Bryan v. Sundberg, 5 Tex. 418
Lewis Sutherland on Statutory Construction,
     Vol. 2, Sections 572, 627, 628 and 631
Whiting v. Town of West Point, 15 L.R.A. 861

Opinion No. O-4270 of this Department, rendered on January 6, 1942, construes Article 5400a, V. A. C. S., and holds that the Commissioners' Court of Jasper County, in making an oil and gas lease on county school land, must comply with the provisions of Article 5400a, V. A. C. S. We enclose herewith a copy of said opinion for your information.

→ It is well-settled law in Texas that the ordinary form of an oil and gas lease is a sale or conveyance of an interest in land. 31 Texas Jurisprudence, Sec. 39, Oil & Gas, pp. 574, 575 and 576.

—It is also a well-established rule of statutory construction that statutes in 'pari materia' should be construed together and where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the Legislature intended to make the general act controlling. Sutherland Statutory Construction, 3rd Edition, Horack, Vol. 2, pages 541, 542 and 543.

On the presumption that whenever the Legislature enacts a provision it has in mind the previous statutes relating to the same subject matter, it is held in the absence of any express repeal or amendment therein, the new provision was enacted in accord with the legislative policy embodied in those prior statutes, and they should all be construed together. Provisions in an act which are omitted in another act relating to the same subject matter will be applied in a proceeding under the other act when not inconsistent with its purposes. Prior statutes relating to the same subject matter are to be compared with the new provision; and if possible by reasonable construction, both are to be so construed that effect is given to every provision of each. Sutherland Statutory Construction, 3rd Edition, Horack, Vol. 2, pages 530 and 531.

We call your attention to the fact that said House Bill 861 (codified as Art. 5400a, V. A. C. S.) does not contain any repealing clause. We are therefore inclined to the view that the safe construction is to follow Article 5400a, V. A. C. S. and yet at

the same time such article should be harmonized with Article 2753, V. A. C. S. This we think can clearly be done. A common school district desiring to make a mineral lease on its property can comply with all of the provisions of Article 5400a, and, in addition, it can thus comply with Article 2753, V. A. C. S. by securing the approval of the county school trustees to the terms of the lease. (In this connection we also call your attention to the case of Logan v. Ford, 254 S. W. 701, dealing with an irregular sale of school land but which was later ratified by the Commissioners' Court. Also see opinion No. 0-6584 of this Department, a copy of which is enclosed herewith which, among other things, discusses ratification of irregular sales of school land.) Also we wish to point out that the provisions of Article 2753, V. A. C. S., dealing with the application of the proceeds from the sale of the property of a common school district are not affected by Article 5400a and can be followed.

Under the facts stated in your request, the record title to the land inquired about is in the County Board of School Trustees. You state further in your letter that the Board of Trustees of New Prospect Common School District No. 40 is now exercising jurisdiction over the same. The writer of this opinion conferred with you seeking further information as to the basis upon which the common school district asserted title or jurisdiction over the land, and you stated that according to your information the common school district was asserting some character of claim or title contending that although the record title was taken in the name of the county school trustees the land actually belonged to the common school district and should have been taken in the name of or expressly for the benefit of the common school district. Not having the full facts before us we can express no opinion as to where the superior title to this land rests.

We answer your questions as follows:

1. Under the facts stated, the record title to said land is in the county school trustees. We express no opinion as to where the superior title rests, inasmuch as we do not have the complete facts in the matter.

2. Under the facts stated above, it is our opinion that the safe procedure is to take the mineral lease from the county school trustees (who have the record title) and from the common school district trustees (who claim the land) with the approval of the county school trustees, and in conformity with Articles 5400a and 2753, supra, as hereinabove outlined in this opinion.

3. In answer to your third question, it is our opinion that if the common school district is held to have the superior title to the land (a matter we do not pass on here) a mineral lease can be

Honorable T. M. Trimble, page 9

executed in conformity with Articles 5400a and 2753, supra, in the manner hereinabove outlined in this opinion. However, we recommend that as long as the record title is outstanding in the county school trustees, the safe thing to do is to secure their execution of the lease as well as the execution thereof by the common school district trustees with the approval of the county school trustees.

Very truly yours,

APPROVED FEB 14, 1945

ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS

By

Wm. J. Fanning
Assistant

WJF/JCP
Enclosure-2

8-14-52

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN
